JAMES A. HARNAGE *v.* RAQUEL TORRES ET AL.*

Superior Court, Judicial District of New London
File No. CV-10-5013960

---

* Affirmed. *Harnage* v. *Torres*, 155 Conn. App. 792, 111 A.3d 523 (2015).

Memorandum filed December 24, 2013

*James A. Harnage*, self-represented, the plaintiff.

*Madeline A. Melchionne*, assistant attorney general, for the defendants.

COSGROVE, J.

## FACTS

On April 30, 2012, the defendants, Deputy Warden Raquel Torres and Warden Anthony Coletti, moved for summary judgment on the ground that the self-represented plaintiff, James A. Harnage, is not entitled to the relief that he seeks, and the defendants therefore are entitled to judgment as a matter of law. The defendants filed a memorandum of law in support, accompanied by various exhibits. On July 9, 2012, the plaintiff filed an objection to the defendants' motion for summary judgment and a cross motion for summary judgment. The plaintiff also filed a memorandum of law in opposition to the defendants' motion for summary judgment and a memorandum of law in support of his

motion for summary judgment, accompanied by various exhibits. The court heard argument on this matter on August 30, 2013. On March 8, 2010, the plaintiff filed a three count complaint against the defendants, alleging that they violated his constitutional rights, breached their fiduciary duties, and inflicted emotional distress. The plaintiff alleges that the defendants improperly ordered the opening of an envelope, which was clearly marked "Attorney-Client Privileged Communication" and was designated as "Legal Mail." The plaintiff alleges that in September, 2009, he placed into the mail system a sealed envelope addressed to his counsel, Attorney Lorenzo J. Cicchiello, and he was approached by Michael Lewis, a correctional counselor, regarding the envelope being overweight. On October 5, 2009, the plaintiff alleges that Lewis approached him again about the envelope, and that Torres ordered Lewis to open the envelope in the plaintiff's presence. In the envelope, the plaintiff alleges, was correspondence as well as origami flowers. The plaintiff alleges that the contents of the envelope were returned to him and that he has suffered anxiety, mental anguish, severe migraines and sleepless nights as a result of his concern over the integrity of his privileged mailings.

## DISCUSSION

"Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Brooks* v. *Sweeney*, 299 Conn. 196, 210, 9 A.3d 347 (2010). "In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire

agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent." (Internal quotation marks omitted.) *Ramirez* v. *Health Net of the Northeast, Inc.*, 285 Conn. 1, 10–11, 938 A.2d 576 (2008).

The defendants make several arguments[1] in favor of summary judgment, including that sovereign immunity bars any injunctive relief. The defendants argue that

---

[1] The defendants also argue that monetary damages against the defendants in their official capacity are barred by sovereign immunity, that the plaintiff has not sued the defendants in their individual capacities and that any claims for monetary damages against the defendants in their individual capacities would be barred by General Statutes § 4-165, that qualified immunity bars any monetary damages against the defendants for federal monetary damages, that the plaintiff's allegations of intentional infliction of emotional distress must fail, that the defendants do not have a fiduciary relationship with the plaintiff, that the plaintiff failed to state a cause of action and the plaintiff did not suffer any physical injury.

"In the absence of a statutory waiver of sovereign immunity, the plaintiff may not bring an action against the state for monetary damages without authorization from the claims commissioner to do so." (Internal quotation marks omitted.) *Perrone* v. *State*, 122 Conn. App. 391, 395, 998 A.2d 256 (2010). To the extent that the counts in the plaintiff's complaint are directed at the defendants in their official capacities, the plaintiff's claims for monetary damages are barred by sovereign immunity because there is no statutory waiver, nor has the Claims Commissioner authorized suit. Additionally, even if the complaint could be construed as bringing suit against the defendants in their individual capacities, those claims are barred by § 4-165 because the plaintiff has not established that the defendants' conduct was wanton, reckless or malicious. See General Statutes § 4-165 (a) ("[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment").

the plaintiff has made no substantial claim of a constitutional violation and no claim that the defendants acted in excess of their statutory authority. The plaintiff counters that summary judgment should be denied as to the defendants and granted in his favor because he has set forth a substantial claim of constitutional violations that are of a continuing nature. The plaintiff has other pending civil lawsuits, and he refers the court to those complaints. The plaintiff also argues that the defendants' retaliation and obstruction of his legal pleadings is in excess of the defendants' statutory authority as conferred by Administrative Directive 10.7 (A.D. 10.7).[2] Additionally, the plaintiff argues that the addressee of the mail controls, not the content of the envelope.

"The principle that the state cannot be sued without its consent, or sovereign immunity, is well established under our case law." (Internal quotation marks omitted.) *Markley* v. *Dept. of Public Utility Control*, 301 Conn. 56, 65, 23 A.3d 668 (2011). "[T]he sovereign immunity enjoyed by the state is not absolute. There are [three] exceptions: (1) when the legislature, either expressly or by force of a necessary implication, statutorily waives the state's sovereign immunity . . . (2) when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights . . . and (3) when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority." (Citations omitted; internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, 293 Conn. 342, 349, 977 A.2d 636 (2009).

---

[2] The plaintiff provides responses to each argument made by the defendants. See footnote 1 of this opinion. The court has reviewed each argument, but due to the court's decision in the body of the memorandum, it will not address each argument at length.

The second and third exceptions apply to claims for declaratory or injunctive relief. "[T]he second exception permits a plaintiff to bring an action for declaratory or injunctive relief based on a *substantial* claim that the state or one of its officers has violated the plaintiff's constitutional rights. . . . In order to sufficiently raise such a claim, the allegations of the complaint and the facts in issue must *clearly demonstrate* an incursion upon constitutionally protected interests." (Emphasis in original; internal quotation marks omitted.) *Markley* v. *Dept. of Public Utility Control*, supra, 301 Conn. 67–68. "For a claim under the third exception [to the doctrine of sovereign immunity], the plaintiffs must do more than allege that the defendants' conduct was in excess of their statutory authority; they must also allege or otherwise establish facts that reasonably support those allegations." (Internal quotation marks omitted.) Id., 72.

"Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is . . . a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint." *Turner* v. *Safley*, 482 U.S. 78, 84–85, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987).

"Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution. To state a claim for denial of access to the courts—in this case due to interference with legal mail—a plaintiff must allege that the defendant took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim. . . .

"In addition to the right of access to the courts, a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment. . . . Restrictions on prisoners' mail are justified only if they [further] . . . one or more of the substantial governmental interests of security, order, and rehabilitation . . . [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved. . . . In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail. . . .

"While a prisoner has a right to be present when his legal mail is opened . . . an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Davis* v. *Goord*, Docket No. 01-0116, 2003 U.S. App. LEXIS 13030, *7–*9 (2d Cir. February 10, 2003).

In the present case, the plaintiff and the defendants have submitted a copy of A.D. 10.7. "Privileged Communication" is defined in relevant part as "any written correspondence addressed to or received from . . . attorneys." A.D. 10.7, § 3F. Pursuant to A.D. 10.7, "[o]utgoing privileged correspondence shall not be opened, nor read. Staff shall check that the correspondence is addressed to a privileged individual or entity and to that individual or entity's correct business address." A.D. 10.7, § 4J.

The plaintiff attests in his affidavit that when he was requested to open the envelope by Lewis, he objected and stated that there was legal correspondence as well as five origami flowers. He opened the envelope because he was given a direct order to do so. The

plaintiff also submitted the affidavit of Attorney Cicchiello, who attests that he has represented the plaintiff in the past, that the plaintiff has sent various written correspondence of a business nature, that he received correspondence from the plaintiff containing an origami figure in October, 2009, and that he has "never received anything from [the plaintiff] containing any illicit, illegal or inappropriate material."

The defendants submitted the signed and sworn affidavits of the defendants Torres and Coletti, Lewis, and Michael Lajoie, a district administrator for the Department of Correction. The defendants Torres and Coletti, as well as Lajoie, all attested in their affidavits that inmates, at times, will attempt to circumvent the mail review process by labeling mail as "privileged" when it is not, or will attempt to assess the level of scrutiny given to privileged mail by sending seemingly harmless items, so they may send more dangerous items later. Coletti attested that "[i]f an envelope or package that is marked as privileged or legal mail appears suspicious, that package will be brought to the attention of a Supervisor. A package can appear suspicious because of the manner in which it is addressed. . . . A package may be an unusual size or shape or may make an unusual sound, suggesting that the package contains something other than documents. A package that is bulky is cause of concern." Defendants' Exhibit 6, ¶¶ 25–27. Coletti further attested that there was no discipline imposed on Torres regarding this incident, nor was there a reason to, and that he "simply used this as an opportunity to remind Supervisors of the proper procedure." Defendants' Exhibit 6, ¶¶ 49 and 50.

Both defendant Torres and Lajoie attested that "[t]he arbitrary enforcement—or lack of enforcement—of the prison procedures and rules compromises the safety and security of the prison facility as well as the staff who work in that facility and the inmates who are housed in

the facility." Defendants' Exhibit 5, ¶ 56, and Defendants' Exhibit 8, ¶ 75. Lewis attested that the "[m]isuse of the mail system can pose a threat to the safety and security of the facility, inmates, correction staff, and public. It is therefore important that concerns regarding the possible misuse of the mail system be addressed." Defendants' Exhibit 7, ¶ 26.

As noted in the above referenced affidavits submitted by the defendants, the defendants had a reasonable basis for suspicion and were concerned for the safety and security of the inmates and facility. The envelope was bulky and did not appear to be privileged mail. The envelope was opened in the plaintiff's presence and origami flowers were found inside. Origami flowers are not correspondence to an attorney that falls within the category of privileged mail. There is no evidence presented that any correspondence contained in the envelope was read or confiscated. The plaintiff agrees that the envelope contained paper origami flowers. Although the plaintiff's affidavit makes general reference to other issues with his outgoing mail, the plaintiff has limited his complaint to only this single incident. The plaintiff has not established a substantial claim as to the violation of his constitutional rights regarding his legal mail, nor has he established that the defendants acted in excess of their statutory authority. The defendants followed their procedure for mail that appeared suspicious, opened the mail in the plaintiff's presence, and did not read nor confiscate the contents of the mail. The plaintiff cannot establish that this occurrence violated his constitutional rights.

Moreover, this factual foundation eliminates the underpinnings of any claim of breach of fiduciary duty or intentional or negligent infliction of emotional distress. There is no fiduciary duty between the defendants and the plaintiff in this situation, nor can the defendants' conduct be construed to rise to the level of extreme or

outrageous. The defendants have met their burden of showing the absence of any genuine issue of material fact and that they are entitled to judgment as a matter of law. The plaintiff's evidence does not establish any genuine issues of material fact.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted, and the plaintiff's cross motion for summary judgment is denied.